UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEO HINES, SR. *pro se*, on behalf of
himself, *et al.*,

                                            Plaintiff,

        -v.-

                                                                   5: 11-CV-835

CENTRAL NEW YORK REGIONAL                        (GLS/ATB)
TRANSPORTATION AUTHORITY, *et al.*,

                                            Defendants.
_____

THEO HINES, SR.
Plaintiff, *pro se*

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review this complaint, together with an application to proceed *in forma pauperis* (IFP) from *pro se* plaintiff, Theo Hines, Sr. (Dkt. Nos. 1, 2). In his complaint, plaintiff appears to allege that he was terminated from his employment as a bus driver with defendant Central New York Regional Transportation Authority ("CENTRO"), based upon his race, in violation of a multitude of statutes and constitutional provisions. (Dkt. No. 1). The complaint lists 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411-15; The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the 1st, 4th, 5th, 8th, 9th, 13th, and 14th Amendments of the United States Constitution; Article I, §§ 8, 10 of the United States

Constitution; and a variety of "pendent"[1] New York State statutes and constitutional provisions. (Dkt. No. 1 at 2-4).[2] Plaintiff's claims include violations of Due Process and Equal Protection.[3] Plaintiff seeks "compensation, back pay." (Dkt. No. 1 at 11).

## I.    IFP Application

Plaintiff has filed this action, requesting that he be granted IFP status pursuant to 28 U.S.C. § 1915. (Dkt. No. 2).  The statute governing IFP actions provides that the court may authorize the commencement of a civil action without the payment of fees, when the plaintiff files an affidavit that includes a statement that he is unable to pay the required fee or give security therefor. 28 U.S.C. § 1915(a)(1).  Plaintiff in this case has filed a form-motion to proceed IFP. (Dkt. No. 2).

A review of the application shows that plaintiff states that he is not employed and, in the last year, has received funds from "Unemployment." (Dkt. No. 2 at 2). Plaintiff also states that he has a checking account with a balance of $ 1,200.00, and he owns his house, worth $ 71,000.00. *Id.*  However, plaintiff has no dependents, and he has not indicated how much equity he has in his home, nor has he stated how his expenses may affect his ability to pay the filing fee.  The filing fee in this court is $ 350.00, and plaintiff has not given this court enough information for it to make a

---

[1] The court would point out that "pendent" jurisdiction is now referred to as "supplemental jurisdiction."

[2] The court notes that there are page numbers at the bottom of plaintiff's complaint, but they do not match the page numbering assigned by the court's CM/ECF system.  For ease of reference, the pages cited to by the court will be those assigned by the court's electronic system.

[3] Plaintiff also mentions "RICO-like acts," but never elaborates upon this statement. (Dkt. No. 1 at 2).

2

determination of whether plaintiff meets the financial requirements for IFP status.

Even assuming that plaintiff meets the financial criteria for IFP, section 1915 also provides that the court may dismiss a complaint *at any time* if the court finds that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Even if plaintiff had paid the filing fee, the court has "inherent authority" to dismiss a complaint on the same basis. *Fitzgerald v. First East Seventh Street Tenants*, 221 F.3d 362, 363-64 (2d Cir. 2000). Dismissal for failure to state a claim may be based upon either, or both, of two grounds: (1) a challenge to the sufficiency of the pleading under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Bridgeforth v. Popovics*, No. 09-CV-545, (GTS/RFT), 2011 WL 2133661, at *2 (N.D.N.Y. May 25, 2011) (citing *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (discussing the standard for a motion to dismiss)).

In deciding whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim will be frivolous when it is "based on an 'indisputably meritless

legal theory'. . . or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citing *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995)). The court must keep in mind that when a plaintiff proceeds *pro se*, particularly when he or she claims violations of civil rights, the pleadings must be construed with great liberality. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). The court must interpret the pleadings to raise the strongest arguments they suggest. *McPherson v. Coombe*, 174 F.3d 276, 279 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, *pro se* status does not exempt the plaintiff from compliance with relevant rules of both procedural and substantive law. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted). Finally, if a liberal reading of the complaint "gives any indication that a valid claim may be stated," the court must afford plaintiff leave to amend. *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000).

The court has reviewed plaintiff's complaint for sufficiency under these standards and finds that, notwithstanding the liberality with which *pro se* actions are treated, plaintiff's complaint fails to set forth factual allegations plausibly suggesting that he has stated a claim upon which relief may be granted, and that some of plaintiff's claims are frivolous. Thus, notwithstanding the insufficiency of plaintiff's IFP application, the court will grant IFP status in order that the complaint may be filed and then, recommend dismissal of the complaint under section 1915(e). The court will

recommend dismissal with prejudice because I find that no amendment will cure the defects in the pleading.

## II.   Background

Plaintiff's[4] pleading is very difficult to read and understand.  In the caption of the complaint, it appears that plaintiff has sued CENTRO and eight individual executives of the company; the Amalgamated Transit Union ("ATU") and individual members of its executive committee; CENTRO's "Workers Compensation Lawyers;" and CENTRO's "John Doe" Representatives for the New York State Unemployment Insurance Board. (Dkt. No. 1 at 1).  In the body of the complaint, plaintiff also names HR ONE Consulting Firm and the New York State Workers Compensation Board as "Defendants." (Dkt. No. 1 at 5-6).

It appears that plaintiff is challenging the termination of his employment as a bus driver for defendant CENTRO on July 18, 2008. (Dkt. No. 1 at 2).  Plaintiff states that he began working as a bus driver for CENTRO in February of 1992, and that his employment was governed by a Collective Bargaining Agreement ("CBA") between defendants CENTRO and ATU.[5] (Dkt. No. 1 at 4-5, 9).  Plaintiff states that defendants agreed with each other to "attach a Badge of infamy" to plaintiff by "unlawfully falsely

---

[4] The caption of the complaint lists "Theo Hines, Sr. pro se, on behalf of himself et al. . . . ." (Dkt. No. 1 at 1).  It is unclear whether plaintiff is simply attempting to write in "legal-ese," or whether he is attempting to bring an action on behalf of himself and other individuals.  If he is attempting to bring an action on behalf of other individuals, he may not do so.  As a *pro se* plaintiff, he may only represent himself. *See Cheung Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990).  Thus, to the extent that he attempts to bring this action on behalf of other individuals, it must be dismissed.

[5] Plaintiff quotes sections of the CBA in his complaint. (Dkt. No. 1 at 7-8).

classifying him as a drug head thereby, subjecting him (without due process) to a code not applicable to any other employee." (Dkt. No. 1 at 9). Plaintiff claims that this "Badge of infamy" caused him to be denied the right and/or privilege "(as was afforded to other bus operators, both black and white) to have his initial drug tests confirmed, if the initial test showed positive." *Id.*

Plaintiff's termination was based upon a positive drug test, however, plaintiff claims that the test was a "false-positive," and that defendants fraudulently failed to "reconfirm" the test. (Dkt. No. 1 at 2). Plaintiff claims that he only recently[6] discovered that his termination was discriminatory and based upon his race, when his three-year Unemployment Insurance Benefits case terminated in plaintiff's favor. (Dkt. No. 1 at 2). Plaintiff states that the ALJ in the Unemployment Insurance Benefits case granted plaintiff benefits because defendant CENTRO failed to produce any witnesses properly establishing the chain of custody of the plaintiff's urine specimen "to sustain the admissibility of the test results." (Dkt. No. 1 at 2 & Dkt. No. 1-1; Plf.'s Ex.). Based upon this favorable decision, plaintiff concludes that he did not commit misconduct, and instead, was terminated based on his race.[7] Plaintiff states that prior to his termination, CENTRO discovered that plaintiff had spoken to "two (2) known African American male ZEBRA TEAM members because his union had refused/failed to

---

[6] Plaintiff states that he was unable "(for years) to appreciate that he was being intentionally discriminated against by Defendants *until* he had lived through a series of incidents . . . and was then able to perceive the overall discriminatory pattern." (Dkt. No. 1 at 2).

[7] Plaintiff states that "the above civil rights and/or constitutional violations, all, surfaced and/or was [sic] discovered during plaintiff's, now, three (3) year N.Y.S. Unemployment Insurance trial against CNY Centro Defendants." (Dkt. No. 1 at 2).

6

present medical and/or investigatory evidence that his random drug test was a false positive and/or that said false positive . . . was never actually re-confirmed by another (second) drug lab. . . ." (Dkt. No. 1 at 2). Plaintiff has apparently concluded, based upon this Administrative Law Judge's decision, that he must have been terminated because of his race.

## III. Workers Compensation Board/Attorneys

### A. Eleventh Amendment

It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. Immunity from suit under the Eleventh Amendment extends to State agencies and departments. *Burnette v. Carothers*, 193 F.3d 52, 57 (2d Cir. 1999).

In this case, in the body of the complaint, plaintiff oddly names the New York State Workers Compensation Board ("WCB") as a defendant. (Dkt. No. 1 at 6). It is unclear why the WCB is named at all since none of the facts in this complaint deal with Workers Compensation. Plaintiff discusses CENTRO and Unemployment Insurance, but never mentions Workers Compensation.[8] The Workers Compensation Board is an agency of the State and cannot be sued under section 1983. *Petway v. New York State*

---

[8] Plaintiff's references are all very vague. He also mentions, in passing, jurisdiction under the Americans With Disabilities Act (ADA), although none of plaintiff's facts mention a disability. Plaintiff only claims that he was terminated based on his race in violation of a multitude of statues and constitutional amendments, but never states how he is disabled or how there was any discrimination against him based on a disability.

7

*Transit Auth.*, No. 10-CV-1419, 2010 WL 1438774, at *2 (E.D.N.Y. April 27, 2010); *Maldonado v. New York State Workers Comp. Bd.*, No. 05–CV-211A, 2005 WL 1523586, at *1 (W.D.N.Y. June 27, 2005). Thus, any claims[9] against the New York State Workers Compensation Board should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii) (dismissal based on immunity of defendant).

### B.   CENTRO's "Workers Compensation Lawyers"

Plaintiff also names CENTRO's "Workers Compensation Lawyers." (Dkt. No. 1 at 1). Because there are no claims or statements of fact in the complaint that even remotely deal with Workers Compensation, it is unclear why plaintiff names CENTRO's Workers Compensation attorneys as a group. Because there are no claims stated against these unnamed "attorneys" as a group or otherwise, any claims against these purported defendants must be dismissed as frivolous and for failure to state any plausible claim against them.

## IV.   Employment Discrimination

Plaintiff bases his claim of racial discrimination upon his statement that he recently discovered that all of the defendants conspired against him to fire him based on a false-positive drug test in 2008. He states that this was a "massive conspiracy" between, among others, CENTRO, it's officers, the ATU, and an unknown defendant HR ONE Consulting Firm. This conspiracy allegation is based solely upon plaintiff's

---

[9] The court makes this recommendation to the extent that there are any claims against the WCB. As stated herein, there is no indication that plaintiff is complaining about anything but his dismissal from CENTRO on the basis of a positive drug test, and the only decision that plaintiff cites as the basis for his claim involves Unemployment Insurance benefits, not Workers Compensation benefits.

interpretation of the Unemployment ALJ's decision, finding that plaintiff was not fired for "misconduct" in 2008 and awarding plaintiff unemployment insurance benefits based upon this finding. Plaintiff attaches the ALJ's decision to his complaint, thus, the court may review it in making its determination.

### A.     Civil Rights Statutes 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988

#### 1.     Legal Standards

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, or give evidence)." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (citations omitted); *see also Phillip v. Univ. of Rochester*, 316 F.3d 291, 297–98 (2d Cir.2003).

In order to state a claim pursuant to 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct was attributable, at least in part, to a person or entity acting under color of state law, and that the challenged conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d. Cir. 2010), *cert. denied sub nom. Cornejo v. Monn*, 131 S. Ct. 158 (2010); *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). The plaintiff must also allege that the defendant was personally involved in the conduct causing the constitutional violation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted).

To state a claim of conspiracy to violate a plaintiff's civil rights under section 1983, a plaintiff must show an agreement between two or more state actors, to act in concert to inflict a constitutional injury, and an overt act done in furtherance of that goal, causing injury to the plaintiff. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Conclusory allegations of conspiracy, however, are insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). In order to state any claim for a violation of civil rights, a plaintiff must allege some specific allegation of fact indicating a deprivation of rights, not "a mere litany of general conclusions that shock, but have no meaning." *Coakley v. Jaffee*, 49 F. Supp.2d 615, 625 (S.D.N.Y. 1999) (quoting *Barr*, 810 F.2d at 363).

Conspiracy claims may also be brought under 42 U.S.C. § 1985. Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the law.[10] *Davila v. Secure Pharm. Plus*, 329 F. Supp. 2d 311, 316 (D. Conn. 2004) (citing 42 U.S.C. § 1985(3)). Section 1986 provides that every person who is aware of a conspiracy under section 1985, but does not prevent or aid in preventing the injury, while having the power to do so, will be liable in damages. 42 U.S.C. § 1986. A claim under section 1986 is contingent to a valid claim under section 1985 and must be commenced within one year after the cause of action accrues. *Id.*

The protection afforded by section 1985 requires the conspiracy to be motivated

---

[10] The relevant part of 42 U.S.C. § 1985 provides a narrower protection that for conspiracies under section 1983. Section 1983 protects against conspiracies to deprive an individual of any constitutional right, while section 1985(3) requires an equal protection claim. Since plaintiff in this case is essentially alleging an equal protection violation, the difference is immaterial.

10

by a racial or other class-based animus. *Davila*, 329 F. Supp. 2d at 317. In order to state a claim under section 1985(3), plaintiff must allege a conspiracy for the purpose of depriving him of equal protection; an overt act in furtherance of that conspiracy; and an injury to plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Id.* (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)). Mere conclusory allegations of conspiracy are also insufficient to state a claim under section 1985. *Id.*

### 2. Application

Plaintiff's complaint in this case is a classic instance of conclusory allegations that "shock, but have no meaning." Plaintiff claims that he *recently* discovered, because of the ALJ's decision, that CENTRO, its executives, and the ATU violated plaintiff's rights because they did not afford him a confirmatory drug test, in violation of the CBA, and other rules and regulations. Plaintiff reads the ALJ's decision as a finding that plaintiff did not commit any misconduct, and therefore, he must have been terminated from his employment, not because he tested positive for drugs, but because he is African American, in violation of his Equal Protection and other rights. This "discovery" is his *only* stated basis for making these claims. He makes a point of saying that it was only *after* the ALJ's decision that he determined that the defendants' actions were based upon discrimination. Plaintiff also reads the ALJ's decision to state that plaintiff was denied the right to have two independent tests performed on his urine sample in violation of the CBA.

The Equal Protection Clause of the Fourteenth Amendment requires that the

Case 5:11-cv-00835-GLS-ATB   Document 4   Filed 08/01/11   Page 12 of 20

government treat all similarly situated people alike. *Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir. 1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). However, an equal protection claim can sometimes be sustained even if the Plaintiff does not allege "class-based" discrimination and instead claims that he has been irrationally singled out as a "class-of-one."[11] *Id.*(internal quotations omitted).

To establish an equal protection violation, the Plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Wiggins v. N.Y. City Dep't of Corr.*, 06 Civ. 1946, 2008 WL 3447573, at *8 (S.D.N.Y. Aug. 12, 2008) (citing *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006)). Plaintiff must first show that he was treated differently than similarly situated individuals because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, Plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. Id. In a "class-of-one" claim, the Equal Protection clause requires a "rational basis for the difference in treatment." *Id.* (citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Of the civil rights laws discussed above, section 1983 is the only one that

---

[11] To the extent that plaintiff's complaint may be read to allege a due process claim, the court notes that in New York State, an Article 78 proceeding provides public employees with an avenue of post-deprivation redress that satisfies due process requirements. *Thrall v. CNY CENTRO, Inc.*, No. 5:09-CV-567, 2011 WL 743746, *1 (N.D.N.Y. Feb. 13, 2011) (citing *Sebast v. Mahan*, 754 F. Supp. 2d 423, 431 (N.D.N.Y. 2010)). Thus, any claim based on an alleged denial of due process would also be dismissed.

12

requires state action.[12]  The court will assume that defendants were acting under color of state law, based on the alleged "conspiracy" between CENTRO and the ATU.[13]

Plaintiff claims that defendants conspired to treat him differently by denying him the ability to have two independent drug tests "as afforded to other bus operators, both black and white." (Dkt. No. 1 at 9).  This sentence does not indicate that defendants were discriminating against plaintiff because he was African American.  Instead, plaintiff seems to be stating that he was treated differently than *all* other employees.  Later in the complaint, plaintiff states that this "massive fraud" depended upon "collective malice" against plaintiff, "predicated on an invidious, discriminatory animus, class based . . . because of his ability, courage, and/or willingness to exercise his first amendment constitutional right to speak 'truth to power,' on matters of public concern." *Id.* at 10.  This sentence of the complaint seems to attempt to raise some sort of First Amendment argument, and plaintiff states that he spoke about matters "of public concern, there is no factual support anywhere in the complaint for this vague

---

[12] Section 1981 and 1985 extend to private actors as well. *Griffen v. Breckenridge*, 402 U.S. 88, 101 (1971) (section 1985 applies to private conspiracies); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (section 1981)

[13] There are other defendants, but it is unclear how they fit into plaintiff's claims.  CENTRO and the ATU are the only defendants that plaintiff actually mentions as engaging in any conduct in this case.  CENTRO can be considered a state entity, but the ATU is not.  However, private conduct can be attributable to the state in various ways, two of which occur when there is such a close nexus that the private action is fairly treated as state action or when the private actor operates as a willful participant in joint activity with the state or its agencies such as in the "conspiracy theory." *Tancredi v. Met. Life Ins., Co.*, 316 F.3d 308, 312 (2d Cir. 2003).  In *Thrall v. CNY CENTRO, Inc.*, Senior Judge Neal P. McCurn held that without any allegations of conspiracy, the Union was not acting under color of state law. 2011 WL 743746, at *4.

13

reference to the concept of "retaliation."[14]

Contrary to plaintiff's claims, it is quite clear from the ALJ's decision that there were "two independent testing laboratories" that tested plaintiff's urine sample. (Dkt. No. 1-1 at 3). The reason that the ALJ reversed the denial of plaintiff's claim was CENTRO's failure to establish the "chain of custody" of the samples as required by the Unemployment Insurance Law. The ALJ stated that the results of the two tests were inadmissible, and thus, there was insufficient "evidence" of the misconduct "for unemployment insurance purposes." *Id.* (emphasis added). However, the ALJ also stated that

> the credible evidence establishes that the claimant was discharged for testing positive for illegal substances. In this case, the employer based its termination of the claimant's employment on documents provided to them by two independent testing laboratories.

*Id.* The ALJ's decision also notes that during plaintiff's employment with CENTRO, he "was counseled on issues related to testing positive for illegal substances, including a Workforce Re-Entry Contract that was signed on March 14, 2008, after the claimant allegedly had a positive urine drug test on December 28, 2007." *Id.* It is unclear how

---

[14] Plaintiff does state that, prior to his illegal termination, the defendants discovered that plaintiff had spoken to "two . . . known African American male ZEBRA TEAM members because his union had refused/failed to present medical and/or investigatory evidence that his random drug test was a false positive and/or so-called "positive" was never actually re-confirmed by another (second) drug lab as was/is mandatory by the U.S. DOT, supra." (Dkt. No. 1 at 2). The Zebra Team is apparently a group of individuals that "investigates" allegations made to them, claiming that they have been subjected to discrimination. *See Nuraldin v. Syracuse Academy of Science Charter School*, No. 5:10-CV-419 at 2 n.1 (N.D.N.Y. May 11, 2010) (McCurn, S.J.). It appears that plaintiff was complaining to the Zebra Team about something that the Union failed to do. Even if plaintiff were trying to make a First Amendment retaliation claim, it is as conclusory nature as his other claims and should be dismissed.

14

plaintiff could read this decision and suddenly determine that his termination was based upon his race.

The court also notes that in the complaint, plaintiff claims that the alleged "Badge of infamy," attached to plaintiff by defendants was to "unlawfully falsely classify[] him then as *drug head* thereby, subjecting him (without due process) to a code not applicable *to any other employee*." (Dkt. No. 1 at 9) (emphasis added). The classification of "drug head," if such a classification existed, is not a suspect classification, and has nothing to do with plaintiff's race. Even assuming that defendants were incorrect in such a "classification," it would not be the basis of an equal protection violation. *See Burka v. New York City Transit Authority*, 680 F. Supp. 590, 602 (S.D.N.Y. 1988) (Transit Authority's employment restrictions on illegal narcotics users and perceived users would not violate the Equal Protection Clause to the extent the different treatment of this "class" bears a rational relationship to policy goals) (citing *Reed v. Reed*, 404 U.S. 71, 75 (1971)).

Although plaintiff attempts to assert that he was treated differently than other employees because he did not receive a second drug test, plaintiff's own exhibit shows that there were, in fact, two independent positive tests. Thus, plaintiff cannot rely upon his exhibit as evidence of the defendants' racially discriminatory motive. The rest of the complaint is a rambling discussion, utilizing as many "buzz-words" as possible, most of which do not make sense. Thus, plaintiff has not stated facts establishing a plausible equal protection claim or a conspiracy to violate plaintiff's equal protection rights under section 1983 or discrimination in the "making of contracts" in violation of

section 1981.

Plaintiff's conspiracy claims under section 1985(3) fail for the same reasons that his claims fail under a section 1983 claim, conspiracy or otherwise. Plaintiff's allegations of conspiracy are completely conclusory. It is not even clear from plaintiff's own statements that his termination was based on race,[15] and as stated above, his basis for making this conclusion is an administrative decision that he has misinterpreted. Thus, plaintiff cannot state a claim under section 1985(3). Because plaintiff cannot state a claim under section 1985, any claim under section 1986 must fail also.

The court would point out that 42 U.S.C. § 1988 is not a separate basis for jurisdiction. Section 1988 provides for the applicability of certain law and provides for attorneys fees for prevailing parties in the enforcement of other sections of the civil rights laws. 42 U.S.C. § 1988(a)-(c).

**B.    Title VII**

Plaintiff also alleges Title VII of the Civil Right Act of 1964, as one of the many bases for his employment discrimination claim. 42 U.S.C. § 2000e *et seq*. The court would first point out that an essential element of a Title VII claim is the exhaustion of administrative remedies, and plaintiff may only raise in the district court, claims contained in, or substantially related to, the administrative charge. *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citations omitted); *Holtz v.*

---

[15] Discrimination against plaintiff because defendants thought he was, in his own words, "a drug head," does not qualify as class-based animus for purposes of section 1985.

16

*Rockefeller Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (citations omitted). A right-to-sue letter is generally included with the Title VII complaint. *See also Legnani v. Alitalia Linee Aeree*, 274 F.3d 683, 686 (2d Cir. 2001). Plaintiff in this case does not allege that he exhausted his administrative remedies, and it is unlikely that he did so because he claims that he did not even realize that he was the subject of discrimination until after he received the ALJ's Unemployment Insurance decision, three years after plaintiff was discharged from CENTRO. Thus, plaintiff may not bring a claim under Title VII.[16]

### C.    Americans With Disabilities Act

For some unknown reason, plaintiff cites the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* as a basis for his complaint. (Dkt. No. 1 at 3). However, nowhere in the complaint is there an allegation that plaintiff has, or was discriminated against because of, a disability or a perceived disability. Thus, any claims purportedly under the ADA must be dismissed.

---

[16] In any event, plaintiff would only be able to bring a Title VII action against his employer, not against any of the individual defendants because it is well-settled that Title VII does not apply to individuals. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (citations omitted). The court also notes that in New York, an individual must file a charge of discrimination within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). According to the complaint, plaintiff was terminated on July 18, 2008. It does not appear that plaintiff ever filed a charge of discrimination. Plaintiff states that he only found out about the discrimination after the Unemployment Insurance case ended in his favor in April of 2011. It is unclear how this is possible. If plaintiff had actually been innocent of the misconduct, he would have known immediately upon his termination that the expressed reason for the termination was "false." It would not have taken plaintiff three more years to make that determination. Plaintiff also states in his complaint that he had consulted the "Zebra Team" "prior" to plaintiff's termination. It would appear from this statement that he "suspected" discrimination even prior to his termination. This attempt to toll the statute of limitations is meritless, even if it were possible to do so. Thus, any allegations against his employer based upon Title VII would also be time barred in addition to failing to state a claim.

**D.     Labor Management Reporting and Disclosure Act**

Plaintiff also cites the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 *et seq*. "as to the Union defendants." (Dkt. No. 1 at 3). Plaintiff does not specify upon which sections of the LMRDA he is attempting to base a claim. Plaintiff makes various conclusory allegations in the complaint that the "defendants" violated the CBA and should have protected plaintiff from a violation of his rights, but it is completely unclear how the CBA was violated and on what basis he raises the LMRDA.

Title I of the LMRDA is the "Bill of Rights of Members of Labor Organizations." *Chevalier v. Civil Service Employees Ass'n, Inc.*, No. 1:10-CV-446 (FJS/DRH), 2011 WL 1298739, at *6 (N.D.N.Y. March 31, 2011) (citing 29 U.S.C. § 411(a)(2)). Section 411(a)(2) protects a member's free speech. Under section 412, the statute creates a cause of action for violations of its provisions. 29 U.S.C. § 412. Section 411(a)(1) prohibits the denial of equal rights and privileges of membership. This section refers to unequal treatment of members with respect to their voting rights. *Chevalier*, *supra* at *7. Section 411(a)(5) protects members rights to a "basic fair hearing." *Id* at *8. However, the hearing referred to in the statute involves removal from the Union, not removal from employment. *Id.* None of these sections apply to plaintiff's purported claims in this action; thus, the LMRDA is not a proper basis for plaintiff's claims.

**V.     Supplemental Jurisdiction**

Plaintiff also cites a variety of New York State statutes and constitutional

18

provisions. (Dkt. No. 1 at 4). Plaintiff also cites various New York State Penal Law sections, including obstruction of governmental administration in the second degree and official misconduct by a public servant. *Id.* Under 28 U.S.C. § 1367(a), the district courts have supplemental jurisdiction over state law claims that form part of the same Article III case or controversy. The court may, however, decline to exercise jurisdiction if it dismisses all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In light of this court's finding that the federal claims have no merit, the court should decline to exercise any supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(c)(3).

## VI.  Amendment

If the court is dismissing an action *sua sponte* for failure to state a claim, the court must give plaintiff an opportunity to amend to cure the defects in the original complaint, unless the court can rule out any possibility that an amended complaint would succeed in stating a claim. *Abbas v. Dixson*, 480 F.3d 636, 639 (2d Cir. 2007). This case is an example of an action in which the opportunity for amendment should *not* be allowed. As stated above, the plaintiff's only basis for his claim that he was terminated based on his race is a conclusory determination that the Unemployment Insurance ALJ found that plaintiff had not committed the misconduct, thus, his termination was necessarily based on his race. He also claims that he was refused the opportunity to have a confirming test, as was given to all other bus drivers.

First, the ALJ did not find that plaintiff was innocent of the misconduct. The ALJ found that CENTRO did not produce sufficient evidence regarding the chain of

19

custody, thus, did not prove the misconduct for purposes of Unemployment Insurance. In fact, the first paragraph of the ALJ's decision specifically states that the evidence clearly showed that plaintiff was discharged for testing positive for illegal substances. It is also clear, contrary to plaintiff's assumption, that there *were* two independent testing laboratories, thus, his factual statement is incorrect.  There is absolutely no basis for a claim of racial discrimination based on plaintiff's facts, nor can plaintiff amend in such a way as to state a proper claim, given the particular facts of this case.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY** *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 1, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge